UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TINA M. BYERS,

              Plaintiff,

    v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

              Defendant.

Case No. C17-5000 JCC

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Tina M. Byers seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Ms. Byers contends the ALJ erroneously evaluated (1) the opinions of three doctors and (2) her own testimony. Dkt. 14. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Ms. Byers applied for benefits on October 21, 2009, alleging disability as of January 1, 2000. Tr. 388. Her applications were denied initially and on reconsideration, and by an ALJ in a decision dated April 21, 2011. *Id.* On appeal to this court, the court found that the ALJ had erred in evaluating the opinion of examining psychologist Jamie E. Carter, Ph.D., and the lay witness statement from Ms. Byers' mother, Mary Burke. Tr. 570; Docket No. 3:12-cv-5679

(W.D. Wash.), Dkt. 14 at 2-3.  On remand from the district court, ALJ Cheri Filion found Ms. Byers not disabled in a decision dated June 10, 2014.  Tr. 586-600.  The Appeals Council reversed ALJ Filion's decision and remanded the matter to a third ALJ, M.J. Adams, who issued a decision on November 1, 2016, finding Ms. Byers not disabled.  Tr. 579, 388-398.  Because the Appeals Council did not accept review of ALJ Adams' decision, the 2016 decision is the final decision of the Commissioner.

## THE ALJ'S DECISION

Using the five-step disability evaluation process,[1] ALJ Adams found:

**Step one:**  Ms. Byers has not worked since October 21, 2009, the application date.

**Step two:**  Chronic lumbar spine facet arthropathy, obesity, obstructive sleep apnea, schizoaffective disorder, affective disorders variously diagnosed as mood disorder and bipolar disorder, anxiety disorders variously diagnosed as posttraumatic stress disorder (PTSD) and anxiety not otherwise specified (NOS), borderline personality disorder, and a history of methamphetamine abuse (in remission since August 2009) with ongoing cannabis abuse are severe impairments.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Ms. Byers can perform light work, avoiding operation of machinery if drowsy; perform simple, routine tasks and follow short, simple instructions; do work that needs little or no judgment; perform simple duties that can be learned on the job in less than 30 days; respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required; deal with occasional changes in the work environment; do work that requires no contact with the general public.

**Step four:**  Ms. Byers has no past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Ms. Byers can perform, she is not disabled.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

Tr. 390-398.[3]

**DISCUSSION**

**A. Medical Evidence**

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of an examining doctor. *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996). When contradicted, an examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.*

Ms. Byers contends the ALJ misevaluated the opinions of state agency medical consultant Matthew Comrie, Psy.D., and examining doctors Jamie E. Carter, Ph.D., and John Nance, Ph.D.

**1. Matthew Comrie, Psy.D.**

Dr. Comrie opined Ms. Byers is "[m]oderately [l]imited" in her "ability to work in coordination with or proximity to others without being distracted by them" and her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. 263-64. Dr. Comrie's functional capacity assessment states Ms. Byers "should minimize contact with the general public and large work groups." Tr. 265. Ms. Byers alleges the ALJ erred in failing to account for this limitation in assessing her RFC.

ALJ Adams' 2016 decision does not discuss Dr. Comrie's opinion. Instead, ALJ Adams' decision states "[t]he opinion analysis in the prior decision was not disturbed by the Appeals Council, except for Dr. Carter's opinion, and are [*sic*] incorporated into this decision." Tr. 395. FN 1. ALJ Adams thus appears to rely entirely upon ALJ Filion's prior 2014 decision in regards to the limitations set forth by Dr. Comrie. Turning to ALJ Filion's 2014 decision, that decision

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

does not reject Dr. Comrie's opinion, and in fact "assigned significant evidentiary weight to Dr. Comrie's … State agency assessment limiting the claimant to simple work with limited social contact…." Tr. 596.

ALJ Adams' decision, however, fails to incorporate Dr. Comrie's limitation. Instead, ALJ Adams' RFC assessment limited Ms. Byers from "close coordination with coworkers where teamwork is required." Tr. 392. But the inability to work with coworkers as part of a team is not a functional limitation that can be equated with Dr. Comrie's opinion that Ms. Byers should not have contact with a large work group. Teamwork and coordination can require as few as two people. Working in proximity to or having contact with large groups of people does not necessarily require any teamwork or coordination. The error in failing to incorporate Dr. Comrie's opinion that Ms. Byers cannot work around large groups of people is not harmless, as the vocational expert testified that the representative occupations Ms. Byers could still perform typically have ten to twenty workers within the larger work area. Tr. 536-37. On remand, the ALJ shall reevaluate Ms. Byers' RFC in light of Dr. Comrie's opinion that Ms. Byers should not work in a large group setting.

### 2. Jamie E. Carter, Ph.D.

The parties discuss at length the assessment of Dr. Carter's opinion testimony contained in the prior 2014 ALJ decision. This discussion is misdirected because ALJ Adams' decision did not rely on the findings made in the prior decision. Rather, ALJ Adams' decision specifically states "[t]he opinion analysis in the prior decision was not disturbed by the Appeals Council, **except for Dr. Carter's opinion**, and are [*sic*] incorporated into this decision." Tr. 395, FN 1 (emphasis added). The Court accordingly focuses on ALJ Adams' 2016 assessment of Dr. Carter's opinions.

### i. Pressures of a Normal Work Environment

Ms. Byers contends the ALJ erred in rejecting Dr. Carter's opinion, in three separate reports dated March 20, 2009, August 12, 2009, and July 8, 2010, that Ms. Byers' diagnosed conditions would impose "marked" limitations on her "[a]bility to respond appropriately to and tolerate the pressures and expectations of a normal work setting…." Tr. 218, 227, 362. In the August 2009 report, Dr. Carter added her observation that Ms. Byers "[s]leeps much of the time currently…." Tr. 227. ALJ Adams' decision fails to address, or even mention, Dr. Carter's opinion that Ms. Byers cannot tolerate the pressures of a normal work setting.

The Court concludes ALJ Adams harmfully erred. *See Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (holding that ignoring a physician's opinion entirely constitutes error). In determining a claimant's RFC, an ALJ must assess all relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Similarly, hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)). As this did not occur, ALJ Adams harmfully erred. On remand, the ALJ shall evaluate Dr. Carter's opinion on Ms. Byers' ability to tolerate a normal work setting.[4]

### ii. Appropriate Interactions with Supervisors

Ms. Byers contends the ALJ erroneously rejected Dr. Carter's opinion, in the same three reports discussed above, that Ms. Byers' diagnosed conditions would impose "moderate"

---

[4] It is noteworthy that this district court previously reversed the first ALJ decision on Ms. Byers' application for failure to address this exact issue. Tr. 570; Docket No. 3:12-cv-5679 (W.D. Wash. July 9, 2013), Dkt. 14.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

limitations on her "[a]bility to relate appropriately to … supervisors…." Tr. 218, 227, 362. Two of these reports state Dr. Carter's opinions were based on her own observations, and one states that her opinions were based on the clinical interview in addition to Ms. Byers' self-report. *Id.*

ALJ Adams rejected Dr. Carter's opinion, concluding "I do not find that the claimant has difficulty with supervisors as she can respond appropriately to supervision." Tr. 396. The only potential support for this conclusion is the next sentence: "The claimant interacts appropriately with treatment providers."[5] *Id.* Interactions with treatment providers are not the same as interactions with supervisors. Ms. Byers' treatment providers are mental health professionals, trained to deal with mentally ill or disabled patients. Nothing in the ALJ's decision suggests that is also likely to be true with most supervisors for unskilled work. Furthermore, a medical treatment relationship is not in any event a supervisory working relationship. The goals and nature of interacting with treatment providers and supervisors are different. Treatment providers are providing a medical service to Ms. Byers, while a work supervisor would expect Ms. Byers to provide services and fulfill all work duties. The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here:

> Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week.

20 C.F.R. 404, Subpt. P, App. 1, 12.00C6b (2016). Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with supervisors in a work setting. *Id.*

---

[5] It is not entirely clear whether this sentence was intended as support for the previous one. If not, no support is offered at all for the ALJ's conclusion, and the conclusory statement fails to provide "specific and legitimate reasons" to reject Dr. Carter's opinion.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

The Court concludes the ALJ erred in failing to provide "clear and convincing reasons" or even "specific and legitimate reasons" to reject Dr. Carter's opinion that Ms. Byers is moderately limited in her ability to interact appropriately with supervisors. On remand, the ALJ shall reevaluate this portion of Dr. Carter's opinion.

### iii. Ability to Care for Self

Ms. Byers contends the ALJ erred in rejecting Dr. Carter's opinion that Ms. Byers would have moderate limitations on her ability to care for herself. In the same three reports discussed above, Dr. Carter found Ms. Byer's diagnosed conditions caused "moderate" limitations on her "[a]bility to care for [her]self, including personal hygiene and appearance…." The March 2009 evaluation was based on Ms. Byers' self-report as well as Dr. Carter's clinical interview. Tr. 218. In an addendum to the evaluation, Dr. Carter wrote Ms. Byers "may go three or four days without showering and her roommate encourages her to get up and shower." Tr. 221-22. In the August 2009 report Dr. Carter observed that Ms. Byers was "[n]ot keeping up with showering" and in an addendum to the evaluation wrote Ms. Byers' "[d]ress and grooming were adequate and her hair was disheveled." Tr. 227, 231. In the July 2010 report Dr. Carter observed that Ms. Byers was "[n]ot keeping up with personal care…." Tr. 362. In a section describing a typical day, Dr. Carter wrote that Ms. Byers was "not keeping up with personal care – showers once per week." Tr. 361.

The ALJ rejected Dr. Carter's opinion on the grounds that Ms. Byers "has regularly presented to appointments with an adequate appearance and appropriate grooming and hygiene (e.g. [Tr. 1482-88, 1516-26]). Moreover, during Dr. Carter's examinations, the claimant's grooming was fair other than the claimant having disheveled hair ([Tr. 215-31])." Tr. 396. Dr. Carter's reports are described above. In the other two citations, examining doctors stated that

Ms. Byers was "[c]asually groomed and attired" and "[w]ell groomed." Tr. 1483, 1518. Dr. Carter's evaluations appear to be based on Ms. Byers' self-report, as Dr. Carter would not have personally observed the frequency of Ms. Byers showering. One personal care activity, frequency of showering, is not necessarily conclusive as to an ability to care for oneself. Some people are adequately groomed without showering every single day.

The Court thus concludes it was not unreasonable for ALJ Adams to reject Dr. Carter's opinion regarding self-care as inconsistent with other medical records and unsupported by Dr. Carter's own personal observations. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. The Court concludes the ALJ offered sufficient specific and legitimate reasons for failing to fully credit Dr. Carter's opinions regarding Ms. Byers' ability to care for herself.

### 3. John Nance, Ph.D.

Ms. Byers contends the ALJ erroneously rejected Dr. Nance's opinion concerning the effect her diagnosed conditions would likely have on absenteeism from work. ALJ Adams' decision incorporated ALJ Filion's 2014 decision with regard to Dr. Nance's testimony. Tr. 395, FN 1. The 2014 decision rejected Dr. Nance's opinion on absenteeism on the grounds that it was "vague and he provided no basis in support of the limitation." Tr. 597.

Substantial evidence does not support this conclusion. In a hearing conducted by ALJ Filion on April 14, 2014, Dr. Nance opined that Ms. Byers' mental health symptoms were "definitely going to affect both the ability to stay on the job and probably attendance." Tr. 468. Asked if Ms. Byers' depression would "be expected to cause difficulty in either attending work on a daily basis or staying at work on a daily basis[,]" Dr. Nance replied "Yes." Dr. Nance

testified "[t]here would be a lingering difficulty … even with … properly prescribed medication and counseling." Tr. 469. When asked about Ms. Byers' borderline personality disorder, he replied "[Y]es, it will have an impact." Tr. 470. When asked to opine on absenteeism if Ms. Byers were "clean and sober," Dr. Nance estimated "a day a month or less." Tr. 470.

Dr. Nance based his testimony on "a statement, I believe, by Dr. Carter that … the panic attacks would be exacerbated in a work like setting and … at least at that point in her life she was having daily panic attacks and there was a statement to the effect of a work setting might exacerbate that." Tr. 468. Dr. Nance appears to be referring to an evaluation by Dr. Carter that Ms. Byers' depression would moderately severely interfere with work activities because it "[w]ould likely affect attendance…." Tr. 360. Similarly, her panic attacks would moderately severely interfere with work activities because they "[m]ay affect attendance [and are] likely to increase in frequency in a work setting." Tr. 360. Dr. Nance's opinion on the effect of Ms. Byers' borderline personality disorder was supported by his knowledge that, as he testified, "there is no chance of the borderline improving with treatment. I think that is to say that there is trouble. You are dealing with one of the most difficult areas that there is to work with." Tr. 476.

The ALJ failed to provide "clear and convincing" reasons discounting Dr. Nance's testimony as vague and unsupported. Dr. Nance clearly testified that in his opinion the effect of Ms. Byers' diagnosed conditions would cause her to miss work "[a]pproximately a day a month." Tr. 476. The mere labeling of his testimony as unsupported does not meet the threshold of "clear and convincing" reasons to reject uncontradicted medical testimony. On remand, the ALJ shall reevaluate Dr. Nance's opinion.

**B.      Ms. Byers' Testimony**

Ms. Byers contends the ALJ erred in rejecting her testimony concerning the extent of her

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

problems with depression, anger, and dealing with other people. The ALJ concluded "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." Tr. 393.

To reject a claimant's testimony once an underlying impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (internal citation and quotation marks omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The ALJ makes credibility determinations; here, the ALJ did not make a finding that Ms. Byers was malingering. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted).

Regarding depression, the ALJ cited instances where providers noted normal mood and affect. The ALJ also cited several instances of treatment notes showing cognitive capacity, while ignoring the fact that many of the same notes showed mood and affect disturbances, including depression.

The ALJ's finding is not supported by substantial evidence. On August 14, 2014, a mental health assessor diagnosed Ms. Byers with major depressive disorder, noting that she "appeared very depressed from the start" of the interview. Tr. 1417 ("At this point Tina meets criteria for … Major Depressive Disorder…"). Nine days later, on August 23, 2014, a provider

seeing Ms. Byers for back pain noted "[n]ormal affect [and] mood…." Tr. 1401. Two months later, on October 15, 2014, a provider seeing Ms. Byers for gastroesophageal pain and knee pain reported a negative result in a screening for "[f]eeling down, depressed or hopeless and little interest or pleasure in doing things." Tr. 1432. The following month, on November 21, 2014, during another appointment for gastroesophageal distress, a provider reported the same negative screening result and noted that Ms. Byers was not seeking treatment for "depressed mood or diminished interest or pleasure. [Rather, the] mental health [complaint] is associated with nausea and vomiting." Tr. 1476, 1478. Yet in the physical exam section, the provider wrote "Inappropriate mood and affect – moderately depressed." Tr. 1478. A month later, on December 17, 2014, a similar screening was negative for depression in the previous two weeks. Tr. 1474. In a psychiatric evaluation on January 21, 2015, Ms. Byer's affect was "depressed … with occasional tears." Tr. 1487. In an appointment on February 24, 2015, for asthma and sleep apnea, a provider noted "normal mood and affect…." Tr. 1456. In a visit on March 19, 2015, for asthma and other non-mental health issues, a screening for feeling depressed was again negative. Tr. 1463. Eleven days later, on March 30, 2015, in a visit for depression, a provider noted a "cyclical depression pattern…." Tr. 1483.

At a mental health services appointment on September 3, 2014, a provider noted Ms. Byers was "depressed [in] mood and affect." Tr. 1592. At a mental health services appointment on December 14, 2015, a provider examination evaluated Ms. Byers as having "depressed" mood and "blunted" affect. Tr. 1579. Another mental health services examination on March 14, 2016, reached the same conclusion. Tr. 1583. A mental health services exam on April 12, 2016 noted "euthymic mood, blunted affect…." Tr. 1490. In a June 17, 2016 mental health appointment, Ms. Byers "denie[d] any depression" at that time. Tr. 1493. An exam on June 29, 2016, noted

"euthymic" mood and "full" affect. Tr. 1497.

As the Ninth Circuit has "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The record is mixed as to Ms. Byers' depression. Mental health providers fairly consistently assessed her as depressed until the most recent treatment notes in the record (June 2016). Non-mental health providers more often reported no mood or affect disturbance, however, the focus of these examinations was not to assess Ms. Byers' mental status but to assess her physical complaints. These providers do not appear to have performed any more than cursory depression screening, nor do they explain the basis for their findings. The ALJ did not provide specific and legitimate reasons why these cursory assessments of Ms. Byers' mental status in the context of examinations focusing on physical complaints are sufficient to undermine the assessments of providers focused on Ms. Byers' mental health impairments. Whether this record reflects "a few isolated instances of improvement" or a pattern of emphasizing or even exaggerating depression symptoms selectively with mental health professionals is not discussed.

Accordingly, the ALJ did not provide "specific and legitimate" reasons to reject Ms. Byers' testimony concerning her depression. On remand, the ALJ shall reevaluate Ms. Byers' testimony in light of the Ninth Circuit's guidance on the waxing and waning of mental health symptoms and with due consideration of different health providers' area of expertise.

With regard to anger issues and getting along with people, the ALJ discounted Ms.

Byers' testimony on the grounds that "she has lived with multiple friends over time without problems" and "is in a relationship…." Tr. 394-95.  In support, the ALJ cites three treatment records.  One quotes Ms. Byers as saying "I don't have very many friends, maybe two.  I am living with one and the other I talk with on the phone off and on.  I generally stay pretty isolated." Tr. 1410.  Another states that Ms. Byers "has been staying with some friends …." Tr. 1493.  The third mentions a boyfriend.  Tr. 1599.  These meager treatment notes do not constitute "clear and convincing" reasons to reject Ms. Byers' testimony.  Ms. Byers need not be utterly friendless to prove difficulty getting along with people.

Accordingly, on remand the ALJ shall reevaluate Ms. Byers' testimony.

## C. Scope of Remand

In general, the Court has discretion to remand for further proceedings or to award benefits. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990).  The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.  "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).  "[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Id.* at 1107.

Here, it is not clear from the record that the ALJ would be required to find Ms. Byers disabled if her testimony and the medical opinions were properly considered. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reevaluate Dr. Comrie's opinion, reevaluate Dr. Carter's opinions on Ms. Byers' abilities to tolerate a normal work setting and to interact appropriately with supervisors, reevaluate Dr. Nance's opinion on Ms. Byers' likely attendance at work, and reevaluate Ms. Byers' testimony on her depression, anger, and ability to get along with other people. The ALJ shall develop the record further and reassess Ms. Byers' residual functional capacity as appropriate, and proceed to step five.

DATED this 11th day of January, 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE